582 A.2d 992

**PRINCE PHILIP PARTNERSHIP**

v.

**Basil CUTLIP, Jr.**

**No. 15, Sept. Term, 1990.**

Court of Appeals of Maryland.

Dec. 10, 1990.

William J. Kobokovich, Jr. and George L. Huber, Jr. (Huber & Lutche, Douglas C.T. Maloon, on brief), Baltimore, for appellant.

Thomas L. Doran (Timothy E. Howie, O'Malley, Miles, & Harrel, on brief), Upper Marlboro, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and MARVIN H. SMITH (retired, specially assigned), JJ.

RODOWSKY, Judge.

Presented here is a claim against a tenant by a landlord seeking contractual indemnity for the landlord's tort liability to a handicapped invitee of the tenant. The trial court correctly held, on the facts presented here and for reasons hereinafter stated, that the indemnification provision of the lease was void by operation of Md.Code (1974, 1988 Repl. Vol.), § 8–105 of the Real Property Article (RP). The statute reads in full:

> "If the effect of any provision of a lease is to indemnify the landlord, hold the landlord harmless, or preclude or exonerate the landlord from any liability to the tenant, or to any other person, for any injury, loss, damage, or liability arising from any omission, fault, negligence, or

other misconduct of the landlord on or about the leased premises or any elevators, stairways, hallways, or other appurtenances used in connection with them, and not within the exclusive control of the tenant, the provision is considered to be against public policy and void. An insurer may not claim a right of subrogation by reason of the invalidity of the provision."

The landlord is the appellant, Prince Philip Partnership (the Partnership). Since 1979, it has held medical office building premises (the Building) adjacent to Montgomery General Hospital. The tenant is the appellee, Basil Cutlip, Jr., M.D., a dermatologist, who in 1985, and for some years prior thereto, maintained his professional office in the Building.

On December 19, 1985, one of Dr. Cutlip's patients, Evelyn A. Yinger (Yinger), sought Dr. Cutlip's professional services at his office. Yinger is afflicted with muscular dystrophy and uses a wheelchair. After examining Yinger, Dr. Cutlip recommended that she then be seen by an ear, nose and throat specialist who also had offices in the Building. Yinger replied that she must first go to the bathroom. Dr. Cutlip wheeled Yinger from his examining room to the lavatory off of the reception area within his suite. Yinger's wheelchair protruded partially into the lavatory, but it could not fit fully through the lavatory doorway. Yinger advised Dr. Cutlip that she could manage on her own. There were no other patients in the reception area. A housekeeper employed by Yinger accompanied her to Dr. Cutlip's office, but precisely where the housekeeper was at this time is unclear. Dr. Cutlip's receptionist was in his personal office answering a telephone call. In order to give Yinger privacy, Dr. Cutlip stepped outside of his suite into the Building corridor, closing behind him the door between the corridor and the reception area. Yinger fell in the lavatory and broke both legs.

There were no public rest rooms in the Building.

Yinger and her husband sued the Partnership, alleging negligence in its failure to provide in the Building public toilet facilities designed for use by handicapped persons. The Partnership impleaded Dr. Cutlip and, later, Yinger's housekeeper, as third party defendants. The plaintiffs never sued over directly against Dr. Cutlip or the housekeeper.

The third party claim against Dr. Cutlip sought complete indemnification based upon the lease. The provision reads:

"22. *Indemnification.* Tenant will indemnify Landlord and each of its partners and save it and them harmless from and against any and all claims, action, damages, liability and property arising from or out of any occurrence in, upon or at the Demised Premises, or the occupancy or use by Tenant of the Demised Premises or any part thereof, or occasioned wholly or in part by any act o[r] omis[s]ion of Tenant or of any employee, patient, client, guest, or invitee of Tenant. In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant shall protect and hold Landlord harmless and shall pay all costs, expenses and reasonable attorney's fees that may be incurred or paid by Landlord in enforcing the covenants and agreements in this Lease and in defending against such actions."

The action was tried before a jury. At the end of the Partnership's case the court held that the above-quoted provision was void under RP § 8–105 and granted a motion for judgment in favor of Dr. Cutlip. While the jury was deliberating, the Partnership settled the Yingers' claims against it. The jury thereafter returned its verdicts, finding in favor of the plaintiffs against the Partnership as defendant and in favor of the housekeeper against the Partnership as third party plaintiff.

The Partnership appealed. We granted certiorari on our own motion prior to consideration of the case by the Court of Special Appeals. The Partnership's appeal submits that the indemnification provision in the lease is enforceable. In addition to meeting that argument on the merits, Dr. Cutlip

has moved to dismiss the appeal for want of a final judgment.

## I

Dr. Cutlip seeks dismissal of the appeal in this multiple parties and multiple claims case based upon the docket entries concerning the claims of the plaintiffs against the Partnership. The entries read:

"10/25/89 # 183

SETTLEMENT PLACED ON THE RECORD AS TO COMPLAINT OF EVELYN A. YINGER AND DAVID C. YINGER AGAINST PRINCE PHILIP PARTNERSHIP.

TYPE: DOCKET

"10/25/89 # 184

VERDICT IN FAVOR OF PLAINTIFFS EVELYN A. YINGER AND DAVID C. YINGER IN AMOUNT OF $150,000.00 FOR EVELYN [A.] YINGER AND $15,-000.00 FOR EVELYN [A.] YINGER AND DAVID C. YINGER AS TO [CONSORTIUM] CLAIM. NO JUDGMENT ENTERED.

TYPE: DOCKET

"10/25/89 # 185

VERDICT IN FAVOR OF THIRD PARTY DEFENDANT, SOPHIA EVANS AGAINST THIRD PARTY PLAINTIFF, PRINCE PHILIP PARTNERSHIP. JUDGMENT ENTERED.

TYPE: DOCKET."

Because of the notation that no judgment was entered as to the Yingers' claim, Dr. Cutlip says there is no final judgment on the plaintiffs' claims.

 Final judgment on those claims is the entry stating that the complaint had been settled. *See Missler v. Anne Arundel County*, 271 Md. 70, 78, 314 A.2d 451, 456 (1974). To effect entry of judgment the docket entry need not expressly use the word judgment. *See Houghton v. County Comm'rs of Kent County*, 305 Md. 407, 504 A.2d

1145, *on reh'g,* 307 Md. 216, 513 A.2d 291 (1986). No judgment was entered on the jury verdict in favor of the plaintiffs because the plaintiffs' claims had been terminated by a voluntary dismissal effected by settling.

## II

■ Under RP § 8–105 a lease provision is void if its effect is "to indemnify the landlord ... for any injury, loss, damage, or liability arising from any ... negligence ... of the landlord on or about the leased premises or any ... appurtenances used in connection with them, and not within the exclusive control of the tenant[.]" The Partnership contends that RP § 8–105 does not apply because the injury to Yinger occurred in Dr. Cutlip's offices, a portion of the premises over which he had exclusive control. Dr. Cutlip contends that the negligence of the Partnership was its failure to provide public toilet facilities adapted for use by handicapped persons, that the omission related to that part of the Building which was not within the tenant's exclusive control, and that the statute accordingly invalidates the indemnification provision.

For § 8–105 to apply it is clear from its text that the negligence of the landlord must be "on or about the leased premises or any ... appurtenances used in connection with them" and that the area involved must not be "within the exclusive control of the tenant." Conversely, where the area "on or about" which the landlord was negligent is "within the exclusive control of the tenant" an indemnification provision is not rendered void by operation of § 8–105. *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 403 A.2d 379 (1979), involving an earlier codification of § 8–105, illustrates the converse situation. The lease from an oil company to an independent operator of a free-standing service station contained an indemnification clause that was broad enough to include indemnification for claims resulting from the landlord's negligence. The tenant's son was injured by a piece of glass falling from a roll-type overhead door in the service station building. Because the tenant had exclusive

control of the premises, the statute was held not to apply. The result was not altered by the fact that the landlord reserved under the lease the right to enter the premises at any time to inspect or repair.

In the case now before us it is undisputed that the Partnership built a new wing on the Building in 1979–80 and that, in the course of that construction, the previously existing public toilet facilities in the Building were removed and the space was thereafter used for storage. No other public toilet facilities were ever installed. The plaintiffs proved, without contradiction, that, because the Building was enlarged by more than fifty percent of the value of the pre-existing structure, applicable building codes required that the Partnership not only continue to provide public toilet facilities in the Building, but that those facilities be designed to accommodate persons in wheelchairs. The plaintiffs also established that the Partnership violated applicable building codes even if one or more other tenants in the Building had within their particular suites lavatory facilities for the handicapped, because access to the special toilet facilities was required to be available to any handicapped member of the public lawfully using the Building. Thus, the "omission, fault, negligence, or other misconduct" of the landlord was not, in the instant matter, "on or about the leased premises" which were "within the exclusive control" of Dr. Cutlip. The negligence of the landlord was "on or about ... appurtenances used in connection with" the leased premises, and those appurtenances were "not within the exclusive control of" Dr. Cutlip. Therefore RP § 8–105 applies, and the indemnification provision in the lease is void.

The Partnership urges that we apply the analysis of *Hogeland v. Sibley, Lindsay & Curr Co.*, 42 N.Y.2d 153, 397 N.Y.S.2d 602, 366 N.E.2d 263 (1977). That case involved the lease by a shopping center landlord to a major department store tenant. It included a covenant by the tenant to indemnify the landlord, including indemnification for loss resulting from the landlord's own negligence. In a

personal injury accident case brought by a customer invitee, both landlord and tenant were found to be liable to the customer. The Court of Appeals enforced the indemnification provision despite a New York statute which read as follows:

> " 'Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.' "

42 N.Y.2d at 155 n. 1, 397 N.Y.S.2d at 264 n. 1, 366 N.E.2d at 264 n. 1.

The court said that "[t]he legislative history and the statute's express invalidation of any agreement *'exempting* the lessor from liability for damages for injuries * * * resulting from the negligence of the lessor'* [emphasis court's] strongly suggests that i[t] was directed primarily to exculpatory clauses in leases whereby lessors are excused from direct liability for otherwise valid claims which might be brought against them by others." *Id.* at 160, 397 N.Y. S.2d at 606, 366 N.E.2d at 267. Because the landlord was "not exempting itself from liability to the victim for its own negligence," the New York statute did not apply. *Id.* at 161, 397 N.Y.S.2d at 606, 366 N.E.2d at 267.

In the matter *sub judice* the proscription of RP § 8–105 is broader than that of the statute invalidating exculpatory clauses which was involved in *Hogeland.* Not only does the Maryland statute invalidate a provision which would "preclude or exonerate the landlord from any liability to the tenant, or to any other person, for any injury," but RP § 8–105 expressly invalidates any provision, the effect of which "is to indemnify the landlord [or] hold the landlord harmless[.]"

JUDGMENT OF THE CIRCUIT COURT FOR MONT-
GOMERY COUNTY AFFIRMED. COSTS TO BE PAID
BY THE APPELLANT.